**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

**JOSEPH JOHN SHIPPS,**

**Plaintiff,**

v.                                          **CASE NO. 21-3223-SAC**

**DAVID GROVES,**
**Sheriff, Cherokee County Sheriff's Department,**

**Defendant.**

**MEMORANDUM AND ORDER
TO SHOW CAUSE**

Plaintiff Joseph John Shipps is hereby required to show good cause, in writing, to the Honorable Sam A. Crow, United States District Judge, why this action should not be dismissed due to the deficiencies in Plaintiff's Complaint that are discussed herein.

**1.  Nature of the Matter before the Court**

Plaintiff brings this *pro se* civil rights complaint under 42 U.S.C. § 1983.  Plaintiff is a pretrial detainee at the Cherokee County Jail in Columbus, Kansas ("CCJ").  The Court granted Plaintiff leave to proceed *in forma pauperis*.  (ECF No. 6.)

Plaintiff alleges in his Complaint (ECF No. 8) that Defendants are violating his Fourteenth Amendment rights because "they do not follow any COVID-19 procedures", including adequate testing, quarantining infected detainees, or adequate cleaning.  He further claims Defendants charge inmates for COVID tests to discourage testing and complains CCJ receives inmates from Sedgwick County who are infected.  Plaintiff alleges that he reported to Jailer Jarrett that he had symptoms of COVID-19 on August 5, 2021.  He also explained he could not breathe and reminded

Jarrett that he suffers from COPD.  He remained in C-pod with a Sedgwick County detainee who was sick but was not seen by medical staff or tested for COVID-19.  On August 10, 2021, Plaintiff was taken to the Columbus Clinic and tested positive for COVID-19.  He was then placed in a segregation cell.  On August 12, 2021, he was seen by Nurse Huffman at the CCJ.  She refused to give him breathing treatments or a chest x-ray.  Eight to ten days later, Plaintiff was moved to E-pod to quarantine.  He alleges he did not eat from August 3 until August 14, 2021.  On September 7, 2021, he got an on-site x-ray.

Plaintiff asserts that Nurse Gina and Nurse Huffman ignored his first report of illness, leaving him to suffer in considerable pain with migraines, body aches, and chest pains.  He further asserts that Sheriff Groves and Captain Tippie are aware that the Sedgwick County Jail is constantly infected with COVID-19 yet they, along with Advance Correctional, have agreed not to test the detainees that they accept from Sedgwick County because they want the funding they get for housing them.  Plaintiff also claims Groves and Tippie do not pass out soap once a week, take temperatures once a week, pass out masks, inform the detainees about COVID-19, or quarantine infected detainees.

Plaintiff names as defendants David Groves, Sheriff of Columbus County; Advance Correctional Health Care, medical provider at the CCJ; Michelle Tippie, Captain; Nurse Huffman; and Nurse Gina.  Plaintiff seeks damages totaling $4 million and the following injunctive relief: full hospital care for his COPD; prohibit the CCJ from taking detainees from other counties; require the CCJ to reduce the population to half capacity and to house detainees without cellmates; require the CCJ to provide masks, sterilization, hand sanitizer, and COVID-19 tests to every inmate and staff member who enters or re-enters the facility; prohibit the CCJ or any other jail from holding inmates with chronic illness and instead require they be released on bond under house

arrest with GPS monitoring; and require the CCJ to meet pandemic guidelines and require the State of Kansas to oversee and manage the CCJ.

## II.  Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)– (2).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988)(citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a

cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the pro se plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007)(citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at 1218 (citation omitted). Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'" *Smith*, 561 F.3d at 1098 (citation omitted). "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

## III.  DISCUSSION

### A.  Claim regarding Plaintiff's Medical Treatment

The Eighth Amendment guarantees a prisoner the right to be free from cruel and unusual punishment.  "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment."  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citation omitted).  Because Plaintiff is a pretrial detainee, his claims are governed by the Due Process Clause rather than the Eighth Amendment.  But "[t]he distinction effectively is immaterial . . . because '[u]nder the Fourteenth Amendment due process clause, pretrial detainees are entitled to the degree of protection against denial of medical attention which applies to convicted inmates under the Eighth Amendment.'"  *Thomas v. Guffey*, 367 F. App'x 957, 959 n.2 (10th Cir. 2010) (quoting *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009), *cert. denied* 558 U.S. 877 (2009)).

The "deliberate indifference" standard includes both an objective and a subjective component.  *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005) (citation omitted).  In the objective analysis, the deprivation must be "sufficiently serious," and the inmate must show the presence of a "serious medical need," that is "a serious illness or injury." *Estelle*, 429 U.S. at 104, 105; *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), *Martinez*, 430 F.3d at 1304 (citation omitted).  A serious medical need includes "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Martinez*, 430 F.3d at 1304 (quoting *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000)).

"The subjective component is met if a prison official knows of and disregards an excessive risk to inmate health or safety."  *Id.* (quoting *Sealock*, 218 F.3d at 1209).  In measuring a prison

official's state of mind, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 1305 (quoting *Riddle v. Mondragon*, 83 F.3d 1197, 1204 (10th Cir. 1996)).

Plaintiff's allegations regarding the care he received at the CCJ are that he reported feeling ill and having possible COVID-19 symptoms on August 5, 2021.  He was then housed with or near another detainee who may have also been exhibiting COVID-19 symptoms.  Five days later, he was taken to the local medical clinic and tested for COVID-19.  When he tested positive, he was returned to the CCJ and was housed in segregation.  He was seen two days later by Defendant Huffman.  The only information Plaintiff provides about this visit is that Huffman did not give Plaintiff the treatment he requested (breathing treatments or a chest x-ray).  Plaintiff alleges he did not eat for 11 days but does not allege he was denied food.  He then states he received a chest x-ray on September 7, 2021 but does not provide the results.

A mere difference of opinion between the inmate and jail medical personnel regarding diagnosis or reasonable treatment does not constitute cruel and unusual punishment.  See *Estelle*, 429 U.S. at 106–07; *Handy v. Price*, 996 F.2d 1064, 1067 (10th Cir. 1993)(affirming that a quarrel between a prison inmate and the doctor as to the appropriate treatment for hepatitis did not successfully raise an Eighth Amendment claim); *Ledoux v. Davies*, 961 F.2d 1536 (10th Cir. 1992)(Plaintiff's contention that he was denied treatment by a specialist is insufficient to establish a constitutional violation.); *El'Amin v. Pearce*, 750 F.2d 829, 833 (10th Cir. 1984)(A mere difference of opinion over the adequacy of medical treatment received cannot provide the basis for an Eighth Amendment claim.).  Where the complaint alleges a "series of sick calls, examinations, diagnoses, and medication," it "cannot be said there was a 'deliberate indifference' to the prisoner's

complaints." *Smart v. Villar*, 547 F.2d 112, 114 (10th Cir. 1976).  The inmate's right is to medical care - not to the type or scope of medical care he personally desires.

Furthermore, delay in providing medical care does not violate the Eighth Amendment, unless there has been deliberate indifference resulting in substantial harm.  *Olson v. Stotts*, 9 F.3d 1475 (10th Cir. 1993).  In situations where treatment was delayed rather than denied altogether, the Tenth Circuit requires a showing that the inmate suffered "substantial harm" as a result of the delay.  *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001); *Kikumura v. Osagie*, 461 F.3d 1269, 1292 (10th Cir. 2006).  Plaintiff makes no claim that he suffered substantial harm as a result of the delayed COVID-19 test, chest x-ray, or other diagnostic procedure or treatment.

Finally, Plaintiff fails to describe the personal participation of each defendant in the alleged constitutional violation.  An essential element of a civil rights claim against an individual is that person's direct personal participation in the acts or inactions upon which the complaint is based. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Trujillo v. Williams*, 465 F.3d 1210, 1227 (10th Cir. 2006). Conclusory allegations of involvement are not sufficient. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). Rather, "to state a claim in federal court, a complaint must explain what each defendant did to [the pro se plaintiff]; when the defendant did it; how the defendant's action harmed (the plaintiff); and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents, at Arapahoe County Justice Center*, 492 F.3d 1158, 1163 (10th Cir. 2007). As a result, Plaintiff must not only name each defendant in the caption of the Complaint, he must do so again in the body of the Complaint and include in the body a description of the acts taken by each defendant that violated Plaintiff's federal constitutional rights.

Mere supervisory status is insufficient to create personal liability. *Duffield v. Jackson*, 545 F.3d 1234, 1239 (10th Cir. 2008) (supervisor status is not sufficient to create § 1983 liability).  An official's liability may not be predicated solely upon a theory of respondeat superior.  *Rizzo v. Goode*, 423 U.S. 362, 371 (1976); *Gagan v. Norton*, 35 F.3d 1473, 1476 FN4 (10th Cir. 1994), *cert. denied*, 513 U.S. 1183 (1995).  A plaintiff alleging supervisory liability must show "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation."  *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010), *cert. denied*, 563 U.S. 960 (2011).  "[T]he factors necessary to establish a [supervisor's] § 1983 violation depend upon the constitutional provision at issue, including the state of mind required to establish a violation of that provision."  *Id*. at 1204 (citing *Iqbal*, 129 S. Ct. at 1949).

Plaintiff's incomplete and conclusory allegations fail to show that any defendant was deliberately indifferent to his safety or serious medical needs.

### B.  Claim regarding COVID-19 Precautions at the CCJ

Plaintiff states generally that the CCJ does not follow "any COVID-19 procedures."  He does not specifically explain what the CCJ does and does not do to prevent the spread of COVID-19.  Plaintiff is particularly critical of the CCJ's practice of accepting detainees from Sedgwick County, yet he does not explain how the practice violates his constitutional rights.  Plaintiff's allegations are simply too conclusory to state a claim for deliberate indifference under the Eighth Amendment.

### C.  Claim regarding Fee for Medical Visit or Testing

Plaintiff complains about being charged a fee for each medical visit he requests.  He does not specifically allege that this practice violates his constitutional rights, but even if he had done so, his claim would fail.

Kansas law provides that "costs incurred by the county for medical care and treatment of prisoners held within the county shall be paid from the county general fund when a determination has been made that the prisoner has no other resources."  K.S.A. 19-1910(b)(2).  "As long as the state meets an inmate's serious medical needs, each state may determine whether a governmental entity or an inmate must pay the cost of medical services provided to the inmate.  *City of Revere v. Mass. Gen. Hosp.,* 463 U.S. 239 (1983).  Accordingly, a state may establish inmate copayments for the provision of medical care.  *See Shapley v. Nev. Bd. of State Prison Comm'rs,* 766 F.2d 404 (9th Cir.1985) (holding that the imposition of a three dollar fee for each medical visit did not give rise to a claim for deliberate indifference to inmate's medical needs); *Johnson v. Dep't of Pub. Safety & Corr. Servs.,* 885 F. Supp. 817 (D. Md. 1995) (policy requiring inmates to pay part of cost of medical care did not show deliberate indifference or cruel and unusual punishment absent proof that inmates were ever refused treatment because of inability to pay); *Mourning v. Corr. Med. Servs.,* 300 N.J. Super. 213, 692 A.2d 529 (1997) (statute providing for prison inmate copayment of medical expenses did not violate inmate's Eighth Amendment rights); *Collins v. Romer,* 962 F.2d 1508 (10th Cir. 1992) (affirming district court ruling that inmate copayment statute which did not provide exceptions to copayment requirement would be unconstitutional)."  *Padilla v. Paradus*, No. CIV.A.07-CV-01151-WD, 2008 WL 4368610, at *5–6 (D. Colo. Sept. 18, 2008).

The Court finds that Plaintiff has not alleged facts which state an Eighth Amendment claim regarding the fees for medical care at the CCJ. Plaintiff has not alleged that he has ever been denied medical care for a serious medical need because he could not pay the fee. So long as inmates have access to necessary medical care, the CCJ can apply a minimal charge to inmates' accounts and recover costs when they have the ability to pay. *See McCall v. Johnson County Sheriff's Dept.,* 71 F. App'x 30, 31 (10th Cir. 2003) ("It is clearly constitutionally acceptable to charge inmates a small fee for health care where, as here, indigent inmates are guaranteed service regardless of ability to pay.")

Accordingly, to the extent Plaintiff is making a claim regarding the constitutionality of medical copayments, it is subject to dismissal.

### D. Request for Release

Plaintiff's claim that he is entitled to release is without merit. "[H]abeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release." *Heck v. Humphrey*, 512 U.S. 477, 481 (1994) (citing *Prieser v. Rodriguez*, 411 U.S. 475, 488-490 (1973)). Therefore, Plaintiff's request for release is not cognizable in a claim brought pursuant to § 1983. If Plaintiff wishes to pursue release, he must file a petition for writ of habeas corpus or seek relief in his underlying criminal case.

## IV. Response Required

Plaintiff is required to show good cause why his Complaint should not be dismissed for the reasons stated herein. Plaintiff is also given the opportunity to file a complete and proper amended complaint upon court-approved forms that cures all the deficiencies discussed herein.[1] Plaintiff is

---

[1] To add claims, significant factual allegations, or change defendants, a plaintiff must submit a complete amended complaint. *See* Fed. R. Civ. P. 15. An amended complaint is not simply an addendum to the original complaint, and instead completely supersedes it. Therefore, any claims or allegations not included in the amended complaint are no longer before the court. It follows that a plaintiff may not simply refer to an earlier pleading, and the amended

given time to file a complete and proper amended complaint in which he (1) raises only properly joined claims and defendants; (2) alleges sufficient facts to state a claim for a federal constitutional violation and show a cause of action in federal court; and (3) alleges sufficient facts to show personal participation by each named defendant.

If Plaintiff does not file an amended complaint within the prescribed time that cures all the deficiencies discussed herein, this matter will be decided based upon the current deficient Complaint and may be dismissed without further notice.

**IT IS THEREFORE ORDERED** that Plaintiff is granted until **January 21, 2022,** in which to show good cause, in writing, to the Honorable Sam A. Crow, United States District Judge, why Plaintiff's Complaint should not be dismissed for the reasons stated herein.

**IT IS FURTHER ORDERED** that Plaintiff is also granted until **January 21, 2022**, in which to file a complete and proper amended complaint to cure all the deficiencies discussed herein.

The clerk is directed to send § 1983 forms and instructions to Plaintiff.

**IT IS SO ORDERED**.

**Dated December 21, 2021, in Topeka, Kansas.**


s/  Sam A. Crow_____
**SAM A. CROW**
**SENIOR U. S. DISTRICT JUDGE**

---

complaint must contain all allegations and claims that a plaintiff intends to pursue in the action, including those to be retained from the original complaint.  Plaintiff must write the number of this case (21-3223-SAC) at the top of the first page of his amended complaint and he must name every defendant in the caption of the amended complaint.  *See* Fed. R. Civ. P. 10(a).  Plaintiff should also refer to each defendant again in the body of the amended complaint, where he must allege facts describing the unconstitutional acts taken by each defendant including dates, locations, and circumstances.  Plaintiff must allege sufficient additional facts to show a federal constitutional violation.