IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**JOSEPH JOHN SHIPPS,**

                **Plaintiff,**

     v.                                        **CASE NO. 21-3223-SAC**

**DAVID GROVES, Sheriff, Cherokee County
Sheriff's Department, et al.,**

                **Defendants.**

**MEMORANDUM AND ORDER
AND ORDER TO SHOW CAUSE**

      This civil rights case is before the Court for screening after the submission of a *Martinez* Report. Plaintiff alleges that his constitutional rights were violated while he was housed at the Cherokee County Jail ("CCJ") in Columbus, Kansas. After reviewing the *Martinez* Report filed by officials of the CCJ, the Court finds that Plaintiff's Amended Complaint is subject to dismissal for failure to state a claim upon which relief may be granted under § 1983.

**I. Nature of the Matter before the Court**

      The Court found that Plaintiff's original complaint was subject to dismissal because it did not adequately state a claim for violation of Plaintiff's constitutional rights. The Court gave Plaintiff a chance to show cause why the case should not be dismissed. Plaintiff filed a response and an Amended Complaint, which made minor revisions.

      Plaintiff alleges in his Amended Complaint (Doc. 12) that Sheriff David Groves, Captain Michelle Tippie, Advance Correctional, and two nurses employed by Advance Correctional

1

violated his Fourteenth Amendment rights because they "refuse to test or quarantine infected detainee or exposed detainees with Covid-19, nor do they follow any CDC guidelines for infectious diseases to stop the spread of Covid-19." (Doc. 12, at 2). He further claims that Defendants charge inmates for COVID tests to discourage testing and complains CCJ receives inmates from Sedgwick County who are infected. *Id*. Plaintiff alleges that he reported that he had symptoms of COVID-19 on August 5, 2021. He was not tested or considered presumptively positive. Plaintiff remained in the general population in C-pod with a Sedgwick County detainee who was sick but was not seen by medical staff or tested for COVID-19. On August 10, 2021, Plaintiff was taken to the Columbus Clinic and tested positive for COVID-19. He was then placed in a segregation cell. On August 12, 2021, he was seen by Nurse Huffman at the CCJ. She refused to give him breathing treatments or a chest x-ray. Eight to ten days later, Plaintiff was moved to E-pod to quarantine. He alleges he did not eat for 14 days due to lack of appetite. On September 7, 2021, he got an on-site x-ray.

Plaintiff asserts that Advance Correctional and its staff ignored his serious illness, leaving him to suffer in extraordinary pain, "letting nature take its course." *Id*. at 5. He further asserts that Sheriff Groves and Captain Tippie were aware that the Sedgwick County Jail was "constantly" infected with COVID-19 yet they suppressed all testing of the detainees that they accepted from Sedgwick County. Moreover, Plaintiff alleges that the defendants "refuse to take any precautions to prevent the spread [of COVID-19] at CCJ." *Id*. at 6.

In his response to the MOSC, Plaintiff argued that the MOSC does not explain how the defendants' actions of allowing infectious diseases to spread is "appropriate." He alleges that the Court is saying that it is appropriate and part of ordinary prison life for an infectious disease to spread, that Defendants have no obligation to contain or stop diseases from spreading, and that

Defendants have no obligation to provide testing for COVID, to quarantine infected inmates, or to take other measures. Plaintiff asserts that leaving him and his cellmate in open general population with COVID and not providing prompt treatment or testing is not reasonable. Plaintiff states, "Any Court will agree the allowance of a jail or prison to spread infectious diseases is a constitutional violation and clearly states a claim for deliberate indifference."

The Court decided it needed more information about Plaintiff's factual allegations and ordered CCJ officials to prepare and file a *Martinez* Report. *See Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978); *see also Hall v. Bellmon*, 935 F.2d 1106 (10th Cir. 1991). The report was filed on May 26, 2022, and the Court has screened Plaintiff's claims under 28 U.S.C. § 1915.

## II.  Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988) (citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th

Cir. 2006).  On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based."  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action."  *Twombly*, 550 U.S. at 555 (citations omitted).  The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face."  *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the *pro se* plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated."  *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007).  The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf."  *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals.  *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009).  As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief."  *Kay*, 500 F.3d at 1218 (citation omitted).  Under this new standard, "a plaintiff must 'nudge his claims across the

line from conceivable to plausible.'" *Smith*, 561 F.3d at 1098 (citation omitted). "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

### III.  DISCUSSION

The *Martinez* Report developed as a means "to ascertain whether there is a factual as well as a legal basis for [a] prisoner's claims." *Gee v. Estes*, 829 F.2d 1005, 1007 (10th Cir. 1987). The report "is treated like an affidavit, and the court is not authorized to accept the factual findings of the prison investigation when the plaintiff has presented conflicting evidence." *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991) (citing *Sampley v. Ruettgers*, 704 F.2d 491, 493 n. 3 (10th Cir. 1983)).

The Court has examined the *Martinez* Report and, for the reasons that follow, is considering the dismissal of this action. Plaintiff will be given an opportunity to respond to the *Martinez* Report and is directed to show cause why dismissal should not be entered.

#### A.  Claim regarding Plaintiff's Medical Treatment

The Eighth Amendment guarantees a prisoner the right to be free from cruel and unusual punishment. "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citation omitted). Because Plaintiff is a pretrial detainee, his claims are governed by the Due Process Clause rather than the Eighth Amendment. But "[t]he distinction effectively is immaterial . . . because '[u]nder the Fourteenth Amendment due process

clause, pretrial detainees are entitled to the degree of protection against denial of medical attention which applies to convicted inmates under the Eighth Amendment.'" *Thomas v. Guffey*, 367 F. App'x 957, 959 n.2 (10th Cir. 2010) (quoting *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009), *cert. denied* 558 U.S. 877 (2009)).

The "deliberate indifference" standard includes both an objective and a subjective component. *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005) (citation omitted). In the objective analysis, the deprivation must be "sufficiently serious," and the inmate must show the presence of a "serious medical need," that is "a serious illness or injury." *Estelle*, 429 U.S. at 104, 105; *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), *Martinez*, 430 F.3d at 1304 (citation omitted). A serious medical need includes "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Martinez*, 430 F.3d at 1304 (quoting *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000)).

"The subjective component is met if a prison official knows of and disregards an excessive risk to inmate health or safety." *Id*. (quoting *Sealock*, 218 F.3d at 1209). In measuring a prison official's state of mind, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 1305 (quoting *Riddle v. Mondragon*, 83 F.3d 1197, 1204 (10th Cir. 1996)).

Plaintiff's allegations regarding the care he received at the CCJ are that he reported feeling ill and having possible COVID-19 symptoms on August 5, 2021. He was then (or had been) housed with or near another detainee who may have also been exhibiting COVID-19 symptoms. Five days later, he was taken to the local medical clinic and tested for COVID-19. When he tested positive, he was returned to the CCJ and was housed in segregation. He was seen two days later

by Defendant Huffman. The only information Plaintiff provides about this visit is that Huffman did not give Plaintiff the treatment he requested (breathing treatments or a chest x-ray). Plaintiff alleges he did not eat for 14 days due to lack of appetite but does not allege he was denied food. He states that he received a chest x-ray on September 7, 2021.

The *Martinez* Report includes Plaintiff's medical records from this period. On August 6, 2021, Plaintiff complained his throat and chest hurt, as well as his stomach, head, and body. His temperature was 99.2 degrees. (Doc. 17-1, p. 297). He was evaluated again on August 8, 2021. His temperature then was 98 degrees. Defendant Huffman ordered that his vital signs be checked twice daily, ordered Tylenol, ordered he be segregated, directed Plaintiff to drink plenty of fluids, and directed medical be contacted if his condition got worse. (*Id*.). On August 10, 2021, Plaintiff was seen by medical. He complained of fatigue, no appetite, headache, nausea, chills and body aches for several days. His temperature was taken and recorded as 98.2 degrees. Defendant Gina LNU ordered a COVID test. (Doc. 17-1, p. 295). Plaintiff tested positive. (Doc. 17-1, p. 294). On August 11, Plaintiff refused Tylenol twice and refused his Prednisone, Mucinex, and vital signs check. (*Id*. at 292-83). On August 12, he again refused his medication and vital signs checks. (*Id*. at 290-91). The same date, he saw Defendant Huffman. The Narrative Progress Note from this visit shows that Plaintiff reported that his throat hurt, and he requested Ensure. His temperature was 98 degrees. Huffman ordered Ensure twice daily. Huffman further noted that Plaintiff stated he had been refusing his medications and vital sign checks because he wanted to go to the hospital. Huffman also ordered a BRAT diet, continued vital sign checks three times a day, and continued his current medications, which included Tylenol and Prednisone. (*Id*. at 295). Plaintiff refused his medication on August 13, 14, 16, and 17. (*Id*. at 280, 283-89). Also on August 17, he filed an inmate grievance begging to be taken to the hospital. (*Id.* at 277). Plaintiff continued to refuse his

medication on August 18, 19, and 20.  (*Id*. at 275-76, 281-82).  On August 24, he was again seen by medical with complaints that he could not breathe, was having headaches, had lost his sense of taste and smell, and was hungry.  He was examined and could take deep breaths without issues.  He denied needing an inhaler.  Huffman ordered Tylenol 500 mg twice a day and twice weekly weight checks for a month.  (*Id*. at 272).  On September 1, Plaintiff filed a medical request saying he had been sick for 29 days, was 30 pounds underweight, had a constant migraine, and needed a lung x-ray.  (*Id*. at 271).  Huffman responded on September 3 that she would order a chest x-ray and noting his weight was being monitored.  (*Id*.).  The chest x-ray was performed on September 7, and it showed Plaintiff's lungs were clear.  (*Id*. at 266).

Plaintiff's allegations, in conjunction with his medical records, do not demonstrate deliberate indifference on the part of any defendant.  Plaintiff was receiving or offered care.  His primary complaint seems to be that he did not receive breathing treatments.  A mere difference of opinion between the inmate and jail medical personnel regarding diagnosis or reasonable treatment does not constitute cruel and unusual punishment.  See *Estelle*, 429 U.S. at 106–07; *Handy v. Price*, 996 F.2d 1064, 1067 (10th Cir. 1993) (affirming that a quarrel between a prison inmate and the doctor as to the appropriate treatment for hepatitis did not successfully raise an Eighth Amendment claim); *Ledoux v. Davies*, 961 F.2d 1536 (10th Cir. 1992) (Plaintiff's contention that he was denied treatment by a specialist is insufficient to establish a constitutional violation.); *El'Amin v. Pearce*, 750 F.2d 829, 833 (10th Cir. 1984) (A mere difference of opinion over the adequacy of medical treatment received cannot provide the basis for an Eighth Amendment claim.).  Where the complaint alleges a "series of sick calls, examinations, diagnoses, and medication," it "cannot be said there was a 'deliberate indifference' to the prisoner's complaints." *Smart v. Villar*, 547 F.2d 112, 114 (10th Cir. 1976).  The inmate's right is to medical care - not to

the type or scope of medical care he personally desires. Plaintiff disagrees with the treatment he received, but the medical records do not demonstrate constitutionally inadequate care.

Furthermore, any delays Plaintiff experienced in receiving care did not violate his constitutional rights. Delay in providing medical care does not violate the Eighth Amendment, unless there has been deliberate indifference resulting in substantial harm. *Olson v. Stotts*, 9 F.3d 1475 (10th Cir. 1993). In situations where treatment was delayed rather than denied altogether, the Tenth Circuit requires a showing that the inmate suffered "substantial harm" as a result of the delay. *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001); *Kikumura v. Osagie*, 461 F.3d 1269, 1292 (10th Cir. 2006). Plaintiff makes no claim that he suffered substantial harm as a result of the delayed COVID-19 test, chest x-ray, or other diagnostic procedure or treatment. He has not demonstrated a constitutional violation based on deliberate indifference or a delay in medical care.

Plaintiff's conclusory allegations fail to show that any defendant was deliberately indifferent to his safety or serious medical needs.

### B. Claim regarding COVID-19 Precautions at the CCJ

Plaintiff states generally that the CCJ does not follow "any COVID-19 procedures." He does not specifically explain what the CCJ does and does not do to prevent the spread of COVID-19. Plaintiff is particularly critical of the CCJ's practice of accepting detainees from Sedgwick County, yet he does not explain how the practice violates his constitutional rights.

The *Martinez* Report is useful in evaluating Plaintiff's allegations. The materials provided show that Defendant Groves implemented COVID-19 precautions in March of 2020, including disinfection of surfaces and providing masks and soap to inmates upon request. (Doc. 17, p. 3; Doc. 17-1, p. 29). Detainees from other agencies were screened upon arrival and rejected if they had elevated temperatures or other symptoms. (Doc. 17, p. 3; Doc. 17-1, p. 23, 27). Visitors to

the CCJ were screened and limited in number.  (Doc. 17-1, p. 20, 26).  The CCJ intentionally reduced its inmate count by releasing on-person misdemeanor and low-warrant inmates and putting in place a new bond schedule allowing own recognizance (OR) bonds.  (Doc. 17, p. 3).  All inmates' temperatures were taken weekly or whenever an inmate reported feeling sick.  (Doc. 17-1, p. 29).  Most COVID-19 prevention protocols at CCJ remain in place, with masking increased by requiring masks for certain persons and situations.  (Doc. 17, p. 3; Doc. 17-1, p. 25).  While Plaintiff seems to believe the precautions should have been different or stronger, it is simply not correct that Groves and Tippie "refuse[d] to take any precautions to prevent the spread [of COVID-19] at CCJ" and simply let nature take its course.  Again, Plaintiff's unsupported, conclusory allegations fail to state a claim for deliberate indifference under the Eighth Amendment, in light of the *Martinez* Report.

### C. Claim regarding Fee for Medical Visit or Testing

Plaintiff complains about being charged a fee for each medical visit he requests.  He does not specifically allege that this practice violates his constitutional rights, but even if he had done so, his claim would fail.

Kansas law provides that "costs incurred by the county for medical care and treatment of prisoners held within the county shall be paid from the county general fund when a determination has been made that the prisoner has no other resources."  K.S.A. 19-1910(b)(2).  "As long as the state meets an inmate's serious medical needs, each state may determine whether a governmental entity or an inmate must pay the cost of medical services provided to the inmate.  *City of Revere v. Mass. Gen. Hosp.,* 463 U.S. 239 (1983).  Accordingly, a state may establish inmate copayments for the provision of medical care.  *See Shapley v. Nev. Bd. of State Prison Comm'rs,* 766 F.2d 404 (9th Cir. 1985) (holding that the imposition of a three dollar fee for each medical visit did not give

rise to a claim for deliberate indifference to inmate's medical needs); *Johnson v. Dep't of Pub. Safety & Corr. Servs.,* 885 F. Supp. 817 (D. Md. 1995) (policy requiring inmates to pay part of cost of medical care did not show deliberate indifference or cruel and unusual punishment absent proof that inmates were ever refused treatment because of inability to pay); *Mourning v. Corr. Med. Servs.,* 300 N.J. Super. 213, 692 A.2d 529 (1997) (statute providing for prison inmate copayment of medical expenses did not violate inmate's Eighth Amendment rights); *Collins v. Romer,* 962 F.2d 1508 (10th Cir. 1992) (affirming district court ruling that inmate copayment statute which did not provide exceptions to copayment requirement would be unconstitutional)." *Padilla v. Paradus*, No. CIV.A.07-CV-01151-WD, 2008 WL 4368610, at *5–6 (D. Colo. Sept. 18, 2008).

The Court finds that Plaintiff has not alleged facts which state an Eighth Amendment claim regarding the fees for medical care at the CCJ. Plaintiff has not alleged that he has ever been denied medical care for a serious medical need because he could not pay the fee. So long as inmates have access to necessary medical care, the CCJ can apply a minimal charge to inmates' accounts and recover costs when they have the ability to pay. *See McCall v. Johnson County Sheriff's Dept.,* 71 F. App'x 30, 31 (10th Cir. 2003) ("It is clearly constitutionally acceptable to charge inmates a small fee for health care where, as here, indigent inmates are guaranteed service regardless of ability to pay.")

Accordingly, to the extent Plaintiff is making a claim regarding the constitutionality of medical copayments, it is subject to dismissal.

## IV. CONCLUSION

The *Martinez* Report and attachments reflect that Plaintiff's claim that Defendants Grove and Tippie were doing nothing to prevent the spread of COVID-19 or even intended to "let nature

take its course" is unfounded and exaggerated. The report and attachments show that Defendants were struggling to address the pandemic. Plaintiff's claim that inmates transferred from Wichita were not screened is not correct. Plaintiff's claim that he has COPD and was therefore at high risk if he contracted COVID is not supported, and his complaint that he received constitutionally inadequate medical care is also not supported. Plaintiff's complaint that he was not "quarantined" after he tested positive, first, appears to be wrong since he was placed in segregation, and second, is not something that violated *his* rights.

As the Court stated in its previous order, the mere fact that Plaintiff became infected with COVID-19 while at the CCJ does not support an Eighth Amendment claim. Every person in the United States, whether in a detention facility or not, has faced COVID-19 exposure. The Court found most troubling Plaintiff's allegation that the defendants refused to take any precautions to prevent the spread of COVID-19. Because the *Martinez* Report demonstrates that Plaintiff's assertion is unfounded, the Amended Complaint is subject to dismissal.

For the reasons set forth, the Court directs Plaintiff to show cause why his Amended Complaint should not be dismissed. Failure to respond by the deadline may result in dismissal of this matter without further notice for failure to state a claim for relief.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff is granted until **August 12, 2022,** in which to show good cause, in writing, why Plaintiff's Amended Complaint should not be dismissed for the reasons stated herein.

**IT IS SO ORDERED.**

**Dated in Topeka, Kansas, on this 12th day of July, 2022.**

                                                **s/ Sam A. Crow**
                                                **SAM A. CROW**
                                                **U. S. Senior District Judge**